14-4352-cr
*United States v. Marsh*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of March, two thousand sixteen.

PRESENT:    RALPH K. WINTER,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                    *Appellee,*

                    v.                                    14-4352-cr

JAMES MARSH, AKA Cowboy, AKA Joe Black,
                    *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:                       Joseph J. Karaszewski, Assistant United States
                                    Attorney, *for* William J. Hochul, Jr., United
                                    States Attorney for the Western District of New
                                    York, Buffalo, New York.

FOR DEFENDANT-APPELLANT:     M. Kirk Okay, The Okay Law Firm, Batavia, New York.

Appeal from the United States District Court for the Western District of New York (Larimer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial in the district court, defendant-appellant James Marsh was convicted of one count of narcotics conspiracy involving oxycodone, in violation of 21 U.S.C. § 846. Marsh appeals a judgment entered November 3, 2014, sentencing him principally to 60 months' imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

On appeal Marsh challenges the admission of (1) identification testimony and (2) co-conspirator statements. We address each issue in turn.

1.     Pretrial Identification Procedures

Marsh was identified at trial by two witnesses, Shantel Williams and Anestacia Wilson. He challenges those identifications, arguing that they were tainted by unduly suggestive police photo arrays presented to the witnesses when they were interviewed by law enforcement officers during the investigation of the crimes in question.

When a defendant challenges the admissibility of identification testimony given by a witness who made a pretrial identification, we conduct a two-part inquiry,

asking first whether the pretrial identification procedures were unduly suggestive and, if so, whether the identification is "nonetheless independently reliable." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). "[A] suggestive procedure 'does not in itself intrude upon a constitutionally protected interest' if it did not contribute significantly to the identification of the defendant." *Id.* at 135 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113 n.13 (1977)). Identification testimony will generally be suppressed only if the identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). "We review the district court's determination of the admissibility of identification evidence for clear error." *United States v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008). We may also review the array itself to assess fairness. *Id*.

First, with respect to the Williams identification, we have reviewed the array and surrounding circumstances, and find no error in the district court's conclusion that the six-photograph array was not unduly suggestive. The array contains photographs of six African-American men of similar age, three of whom, in addition to Marsh, have slightly longer hair. Marsh and two others have gray in their hair. Four, including Marsh, are wearing glasses. Moreover, none of the headshots fails to meet Williams's prior vague description of a "tall, skinny, [Black male]." App. 88. Thus, the district court's finding that "it is a fair array depicting six black men with sufficiently similar characteristics," App. 173, was not clearly erroneous. *See United*

*States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) ("[T]he 'principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)). Because the array was not unduly suggestive, the district court properly admitted the identification testimony "without further inquiry into the reliability of the pretrial identification[s]." *Id.* at 973.

Second, the Wilson identification was also properly admitted by the district court. Wilson had been shown a different, eight-photograph array that the magistrate judge had deemed suggestive enough to inquire about the independent reliability of her testimony. At a hearing to assess independent reliability, Wilson testified that Marsh is her cousin, that she has known him her entire life, and that she has seen him "[a]bout a hundred time[s]." App. 144. Because Wilson had a prior long-standing and familial relationship with Marsh, the district court did not err in concluding that there was an independent basis for the identification testimony. *See Maldonado-Rivera*, 922 F.2d at 976 (identification by co-conspirator who had spent several days with defendant resulted in no likelihood of misidentification). Thus, there was no "substantial likelihood of irreparable misidentification," and suppression was not warranted. *Perry v. New Hampshire*, 132 S. Ct. 716, 720 (2012) (quoting *Simmons*, 390 U.S. at 384).

2.    Out of Court Statements by Co-Conspirator

Out of court statements made by co-conspirators are not hearsay as to other co-conspirators under Federal Rule of Evidence 801(d)(2)(E).  Under Rule 801(d)(2)(E), "a district court may admit an out-of-court declaration that would otherwise be hearsay if it finds 'by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.'" *United States v. Coppola*, 671 F.3d 220, 226 (2d Cir. 2012) (quoting *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011)).  We review admission of such evidence for clear error.  *Id*.

During Williams's trial testimony, she discussed a telephone conversation she had with Jimmie Lee Simmons.  Simmons had been paying Williams, the office manager at a doctor's office, to prepare fraudulent OxyContin prescriptions that Simmons would then fill and resell on the street.  After he was arrested, Simmons called Williams from jail to let her know that Marsh would be taking over Simmons's role in the prescription writing scheme.  The telephone call from Simmons occurred in October 2008.  The indictment states that the conspiracy commenced "in or about November 2008."  App. 11.

On appeal, Marsh argues that because the telephone call took place in October 2008, pre-dating the beginning of the conspiracy as alleged in the indictment, it

was not part of the conspiracy and thus not admissible under Rule 801(d)(2)(E). The duration of the conspiracy charged in the indictment, however, did not preclude the Court from finding by a preponderance of the evidence that there was a conspiracy among Simmons, Williams, Marsh, and others beginning earlier, and that Simmons's comments were made in furtherance of and during the conspiracy. *See United States v. Russo*, 302 F.3d 37, 46 n.3 (2d Cir. 2002) ("The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." (quoting *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999)). The district court did not err in finding that Simmons's statement was made during the conspiracy or that the conspiracy had begun by October 2008. Before Simmons was arrested, Marsh had expressed interest in selling OxyContin, been introduced to Williams, and had driven Simmons to fill prescriptions and sell OxyContin.

Accordingly, the district court did not clearly err in admitting Simmons's statement as a statement in furtherance of and during an ongoing conspiracy under Rule 801(d)(2)(E).

* * *

We have considered all of defendant's additional arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 6 -